CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 16, 2024

LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LARRY ALLEN YOUNG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00180 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JOSHUA SPARKS, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendants. | ) | |

Plaintiff Larry Allen Young, Jr., brought this action under 42 U.S.C. § 1983, alleging that the defendants—deputies and a lieutenant in the Orange County Sheriff's Office—violated his constitutional rights when they failed to protect him from being sexually assaulted in the holding area of the Orange County Courthouse. Defendants have moved for judgment on the pleadings or, in the alternative, for summary judgment. For the reasons discussed below, their motion will be granted as to Young's Equal Protection claim and denied as to his Fourteenth Amendment failure-to-protect claim.

## I.

Young, who was originally proceeding *pro se*, filed this action in the Eastern District of Virginia against defendants Donald Hawkins, Thomas Waddy, and Randall Amos, who are Deputy Sheriffs, and Lieutenant Joshua Sparks. (*See* Compl. [ECF No. 1].) The case was transferred to this court on March 17, 2023. (Mem. Op. [ECF No. 3].) Young is currently incarcerated and is now represented by counsel. The facts set forth below are taken from the pleadings, including the complaint, declarations executed by the parties, exhibits filed by the parties, and prison surveillance footage. (*See* Ex. A, Sparks Decl. [ECF No. 47-1]; Ex. A,

Attachment 1 (1/30/23 Video Footage from Orange County Courthouse); Ex. A, Attachment 2 (1/30/23 Control Room Log); Ex. B, Waddy Decl. [ECF No. 47-2]; Ex. C, Amos Decl. [ECF No. 47-3]; Ex. D, Hawkins Decl. [ECF No. 47-4]; Young Decl. [ECF No. 48-1]; Ex. E, Image Timestamped 1/30/23 11:04:44.051 AM (EST) [ECF No. 49-1]; Ex. F, Image Timestamped 1/30/23 02:31:26.600 PM (EST) [ECF No. 49-1]; Ex. G, Business Records Certificate of Authenticity [ECF No. 49-3].)

## A. General background

In February 2022, Young committed several crimes, including breaking into a house in Orange, Virginia, stealing a firearm from the house, murdering an individual, and attempting to abduct another person on the University of Virginia campus. On January 26, 2023, Young pleaded guilty to abduction by force or intimidation. The Albemarle County Circuit Court sentenced him to 10 years of incarceration with seven of those years suspended. On November 9, 2023, Young pleaded guilty to numerous offenses, including first-degree murder, in Madison County. That court sentenced Young to life in prison on February 21, 2024. Young also faces charges for allegedly molesting his stepchildren; he is awaiting trial in Orange County on eight counts of a parent violating a child under 15, five counts of intercourse with a child under 13, and one count each of child abuse, cruelty/injury to a child, and strangulation.

Before his arrest, Young worked as a University of Virginia Police officer. (Compl. 8.) He also previously worked as a Deputy Bailer at the Central Virginia Regional Jail ("CVRJ"). According to Young, Defendant Sparks also worked at CVRJ before joining the Orange County Sheriff's Office. (*Id.* at 11.) Young alleges that, while he was employed at CVRJ, he witnessed several CVRJ employees participate in a racially motivated assault of an inmate. (*Id.*

at 8.) Young resigned in December 2021 and reported the misconduct to the Virginia State Police. He also launched his own investigation into CVRJ by filing numerous FOIA requests. (*Id.*)

After his arrest, Young was housed at the Albemarle-Charlottesville Regional Jail until his transfer to CVRJ on January 27, 2023.

### B. Allegations in complaint

At CVRJ, Central Corrections System classified Young as an individual in need of protective custody because of his law enforcement background and because of the nature of his convictions and pending charges. (Compl. at 8.)

On January 30, 2023, Young was transferred in a van with six other inmates from CVRJ to the Orange County Courthouse. (*Id.* at 7.) In the van, two of the inmates began asking Young where he was housed, and they allegedly said that they were going to "fuck [him] up." (*Id.* at 9.) Once they arrived at the courthouse, the inmates were transferred to the custody of the Orange County Sheriff's Department. (*See* Pl.'s Decl. ¶ 10, March 14, 2024 [ECF No. 48-1].)

After arriving at the courthouse, Young alleges that from approximately 10:00 a.m. until 3:30 p.m., defendants locked him in a room, fully restrained, with seven other CVRJ inmates. During this time, the other inmates began passing suboxone strips to one another and eating them, getting high before their court appearances. (Compl. at 10.) Lt. Sparks removed the inmate who supplied the drugs from the room. When Lt. Sparks and the inmate were gone, the other inmates told Young that he had to pay them for protection or they would

"fuck [him] up for being a cop." (*Id.*) Young said that he would pay whatever it cost. (*Id.* at 11.)

After Young's hearing, Lt. Sparks escorted him downstairs and placed him in a holding cell alone with the inmate who had provided the drugs. Lt. Sparks left Young in leg irons, but the other inmate did not have any restraints on.[1] When Lt. Sparks left, Inmate Doe approached Young and said, "I heard you don't like strip (referring to suboxone), but you like fucking little girls." (*Id.* at 12.) Young responded that he did not know what he was talking about, and the inmate stated, "You are a cop who ratted on the plug, but you fucking little girls." (*Id.* at 12–13.) Young asserts that Inmate Doe slammed him into the wall of the cell, causing him to strike his head and the lower part of his back. Young began yelling for help, and he he claims the defendants were sitting in their office approximately 50 feet away as he screamed. Inmate Doe told Young that no one was coming to help him, and, apparently, no one did. (*Id.* at 13.)

Inmate Doe then said to Young, "[Y]ou can willingly suck my dick, or I will forcefully fuck you." (*Id.*) Young performed oral sex on Inmate Doe for approximately 10 minutes until he ejaculated. (*Id.* at 14.) Inmate Doe then made Young wash his mouth in the sink and threatened Young that, if he reported to anyone what he did, he would get to him in the jail or the deputies would. (*Id.*)

On the return trip to CVRJ, Young was in a van with Inmate Doe and a woman who Inmate Doe, the CVRJ deputies, and Lt. Sparks referred to as Inmate Doe's wife. (*Id.* at 15.) Inmate Doe told his "wife" that he would get her a bond and that "Sparks" looked out for him. (*Id.*)

---

[1] Young does not identify his alleged assailant by name, so the court will refer to him as "Inmate Doe."

Young alleges violations of the Eighth and Fourteenth Amendments and seeks $5,000,000 in damages. (*Id.* at 15–17.)

### C. Defendants' motions and evidence

On January 30, 2023, Young had a criminal hearing scheduled at the Orange County Circuit Court. (Sparks Decl. ¶¶ 6–7.) Lt. Sparks and Deputies Hawkins, Waddy, and Amos were assigned to perform court security on that date. (*Id.* ¶ 11.)

CVRJ transport officers arrived at the courthouse with Young and two other inmates at approximately 9:25 a.m. (Sparks Decl. ¶ 17 (citing to Attachment 1, 1/30/23 Video Footage).) The transport officers did not tell defendants that Young was in protective custody or that there were any inmates on Young's "keep-separate" list. (Sparks Decl. ¶¶ 9–10; Waddy Decl. ¶¶ 6–7; Amos Decl. ¶¶ 6–7; Hawkins Decl. ¶¶ 6–7.) Young did not make any statements to defendants indicating that he was in fear for his safety or that any of the other inmates at the courthouse that day had threatened him in any manner. (Sparks Decl. ¶ 11; Waddy Decl. ¶ 8; Amos Decl. ¶ 8; Hawkins Decl. ¶ 8.) None of the defendants discussed Young's criminal charges with any of the other inmates at the courthouse on January 30, 2023, nor had they discussed his charges with any other inmates prior to that date. (Sparks Decl. ¶ 14; Waddy Decl. ¶ 11; Amos Decl. ¶ 11; Hawkins Decl. ¶ 11.)

After arriving at the courthouse, Young and the other inmates were taken to a holding area next to the circuit court courtroom to wait for their respective hearings. (Sparks Decl. ¶ 18; *see also* 1/30/23 Video Footage).) At approximately 10:43 a.m., one of the other inmates—Inmate Doe, the inmate alleged to have later sexually assaulted Young—appeared in circuit court for his hearing. (*Id.* ¶ 19.) At approximately 11:04 a.m., Lt. Sparks escorted

Inmate Doe and another inmate downstairs to the holding cells. He removed each inmate's handcuffs but left their ankle restraints secured. (*Id.* ¶ 20.)  Lt. Sparks then walked to the control room near the holding cells. Lt. Sparks does not recall seeing the other defendants in the room at that time. (*Id.* ¶ 21.)

Young entered the circuit court courtroom with his attorney at approximately 11:45 a.m. (*Id.* ¶ 22.) He exited the courtroom with his attorney at approximately 11:50 a.m. (*Id.* ¶ 23.) At approximately 12:54 p.m., Lt. Sparks escorted Young and two other inmates from the holding area next to the courtroom downstairs to the holding cells. Lt. Sparks placed one of the inmates, a female, in one of the holding cells at the end of the hall, and then put Young and Inmate Doe into holding cells near the control room. Like the other inmates, Lt. Sparks removed Young's handcuffs before putting him in the cell, but Young's ankle restraints remained secured. (*Id.* ¶ 24.) Lt. Sparks then walked into the control room near the holding cells, but he did not see Waddy, Amos, or Hawkins. (*Id.* ¶ 25.) Lt. Sparks then went to another area of the courthouse. (*Id.* ¶ 26.)

Deputy Amos escorted another inmate to the holding cells near the control room at approximately 1:05 p.m. (Sparks Decl. ¶ 28.) That inmate's handcuffs were removed, but his ankle restraints remained secured, and he was placed in a holding cell with Young and Inmate Doe. (*Id.* ¶¶ 28–29.) Waddy, Amos, and Hawkins claim they were not in or near the control room or the holding cells between 1:06 p.m. and 2:24 p.m. (Waddy Decl. ¶ 10; Amos Decl. ¶ 10; Hawkins Decl. ¶ 10.)

Security checks were performed at 1:30 p.m. and 2:00 p.m.; Young did not raise any concerns at either time.[2] (Sparks Decl. ¶ 30; 1/30/23 Control Room Log.) None of the defendants observed or heard Young or any other inmate call out for help at any time while they were in custody at the courthouse on January 30, 2023. (Sparks Decl. ¶ 12; Waddy Decl. ¶ 9; Amos Decl. ¶ 9; Hawkins Decl. ¶ 9.)

Transport officers from CVRJ arrived at approximately 2:24 p.m. They began securing the inmates for transport at approximately 2:27 p.m. (Sparks Decl. ¶ 31.) After being secured, Young stood next to Inmate Doe. (*Id.* ¶ 32.) The prisoners were escorted out to the sallyport at approximately 2:32 p.m. (*Id.* ¶ 33.) The prisoners were loaded into two separate vans, the same way they were brought to the courthouse. (*Id.* ¶ 34.) The transport vehicles left the courthouse at approximately 2:36 p.m. (*Id.* ¶ 35.) Other than Amos's appearance at 1:05 p.m., none of the defendants were in the vicinity of the control room or holding cells after Young's court appearance. (*Id.* ¶¶ 36–38 (citing 1/30/23 Video Footage); Waddy Decl. ¶ 10; Amos Decl. ¶ 10; Hawkins Decl. ¶ 10).)

### D. Young's response and declaration

According to Young's declaration (which largely mirrors his complaint), after his status-review hearing, Lt. Sparks escorted Young to the holding cell where Inmate Doe was being held. (Young Decl. ¶ 18.) The holding cell is approximately 50 feet from the courthouse security office. (*Id.* ¶ 22.) Young claims Lt. Sparks removed his handcuffs but placed Young inside the cell without removing his leg irons. (*Id.* ¶ 18.) When Lt. Sparks left the area outside

---

[2] Sparks does not identify who conducted these security checks.

the holding cells, Inmate Doe approached Young, and at this time, only Young and Inmate Doe were present in the cell.  (*Id.* ¶ 19.) Inmate Doe did not have any restraints on.  (*Id.*)

Young claims that Inmate Doe first taunted Young by saying, "You are a cop . . ., but you fucking little girls." (*Id.* ¶ 20.) Inmate Doe then forcefully pushed Young into the wall, causing Young's head and lower back to slam into the concrete. (*Id.* ¶ 21.) Young began yelling towards the courthouse security office for help. (*Id.* ¶ 22.) Inmate Doe told Young that no one would come to help him. (*Id.* ¶ 23.) Despite his screams, none of the defendants intervened in the assault. (*Id.*)

The assault continued, and Inmate Doe offered Young a choice: "You can willingly suck my dick or I will forcefully fuck you." (*Id.* ¶ 24.) Under this threat, Young engaged in oral sex. (*Id.*) During the act, Inmate Doe forced Young onto his knees and aggressively pushed Young's head down and forward while holding onto his jumpsuit, ensuring that Young could not escape. (*Id.*)

Young reported the assault upon returning to CVRJ. (*Id.*) Young began a course of Truvada and Isentress to prevent the contraction of any sexually transmitted diseases. (Patient Provider Med. Orders [ECF No. 24-1].)[3]

---

[3] In his brief, Young describes the findings of certain medical records, and represents that the "observations and findings of Nurse Krop and Dr. Sweeney are documented in Mr. Young's medical records. If this matter were to continue to trial, Mr. Young would introduce these records through Nurse Krop and Dr. Sweeney." (Pl.'s Response Br. 5 [ECF No. 48].) To the extent that Young offers this analysis in opposition to the motion for summary judgment, unverified statements are not relevant to the court's inquiry. "To survive summary judgment, [a p]laintiff cannot rest on unverified statements to create a genuine dispute of fact." *Jones v. Alvarez*, 1:19CV930, 2022 WL 2440437, at *3 (M.D.N.C. July 5, 2022) (citing *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)).

Because of his reported assault, on March 14 two Virginia State Police special agents from the Culpepper Field Office questioned Young about the January 30, 2023 incident. (Young Decl. ¶ 35.) During this interview, Young reported defendants' actions to the Virginia State Police and requested an Internal Affairs investigation. The Virginia State Police either did not complete an investigation within the requisite 30-day period or did not communicate its findings to Young. (*Id.* ¶ 36.)

## II.

Because both parties submitted affidavits, declarations, and evidence in support of their respective positions (*see* ECF Nos. 47-1, 47-2, 47-3, 47-4, 48-1, 49-1, 49-2 & 49-3), the motion is properly considered as a motion for summary judgment under Rule 56, not one for judgment on the pleadings.[4] *See* Fed. R. Civ. P. 12(d).

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly

---

[4] For his part, Young concedes that his complaint fails to state a claim for an Equal Protection violation, so the court will dismiss that claim under Rule 12(c). *See infra* § IV.

probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

Although the court does not make credibility determinations when adjudicating a motion for summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.

Because he was a pretrial detainee at the time of the alleged assault, Young's failure-to-protect claim is governed by the Fourteenth Amendment's Due Process Clause. *See Sanders v. Union Cnty. Jail*, 3:24-cv-240-GCM, 2024 WL 1316231, at *3 (W.D.N.C. Mar. 27, 2024) (citing *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023)).[5] A pretrial detainee states a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm (a so-called "failure-to-protect claim") on the "purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate governmental purpose' or is 'excessive in relation to that purpose.'" *Short*, 87 F.4th at 611 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Defendants must have "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed." *Id.* In other words, the plaintiff must establish that the defendant's action or inaction was "objectively unreasonable." *Id.* (quoting *Kinglsey*, 576 U.S. at 397). Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the [condition at issue] and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Instead, "it is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer v. Brennan*, 511

---

[5] Young concedes that at the time of the alleged assault, he was confined at the Orange County Circuit Courthouse as a pretrial detainee. Even so, Young notes that, because he had already entered an *Alford* plea prior to January 30, 2023, he does not fit neatly within the definition of a "pretrial detainee." (Pl.'s Br. 10 [ECF No. 48].) Defendants have not argued that Young's claim should be governed by the Eighth Amendment, which is a harder standard to meet than the Fourteenth Amendment Due Process standard. *See Short*, 87 F.4th at 608 ("[I]t does not follow that treatment violates the Fourteenth only if it violates the Eighth."); *id.* at 612 ("Though the Supreme Court instructed in *Kingsley* [*v. Henderson*, 576 U.S. 389 (2015)] that an objective test is proper for pretrial detainees' claims under the Fourteenth Amendment, a pretrial detainee can still state a claim if they can meet the more demanding Eighth Amendment standard."). Therefore, for purposes of this motion, the court will assume that Young's claim is governed by the Fourteenth Amendment.

U.S. 825, 836 (1994)). It is not enough, however, "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.*

Young argues that there are genuine issues of material facts that defeat summary judgment. Among other things, he points out that Lt. Sparks, in his declaration, attests to hearing a male inmate yelling at a female inmate in one of the holding cells. (Sparks Decl. ¶ 13.) Young also argues that there is an issue of fact as to whether Inmate Doe's leg restraints remained secured while he was in the holding cell with Young. Sparks maintains that Inmate Doe was placed in the cell with his leg restraints still secured (*id.* ¶ 20), while Young attests that Inmate Doe was entirely unrestrained (Young Decl. ¶ 19). The court finds that this dispute is material because if Inmate Doe—who had recently been separated from the other inmates because he was distributing suboxone strips—was placed in the cell without any restraints while Young was restrained, a jury could conclude that such action was reckless, especially because the two inmates were alone and unsupervised, and Young, himself, was classified as needing additional protection. In other words, taking Young's evidence as true, placing one inmate, restrained, in a cell with another unrestrained inmate could be enough to make out a failure-to-protect claim in that the defendants "recklessly acted . . . to appropriately address the risk" posed by placing these two inmates in a cell together. *Short*, 87 F.4th at 611.

Moreover, at this stage, the court cannot weigh the evidence and must view the evidence in the light most favorable to Young. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Under that standard of review, the court is bound to accept Young's allegation that other inmates said that Sparks "looked out" for them. (Compl. at 15.) Adding that factual allegation, Young alleges that Sparks placed a restrained Young into

a cell with an unrestrained, drug-smuggling inmate with whom Sparks had an illicit relationship. (*See, e.g.*, Pl.'s Decl. ¶¶ 14–16 & 18.) With those factual allegations properly before the court, there is a material factual dispute about whether Sparks failed to protect Young from a known risk of harm. And as it relates to all defendants, Young alleges they were in close proximity during a violent sexual assault and, despite his pleas for help, they failed to intervene. (Compl. at 13; Pl's Decl. ¶ 22–23.) Taking this evidence in the light most favorable to Young, there is a material factual dispute as to whether the defendants failed to protect him.

For these reasons, the court finds that defendants are not entitled to summary judgment on Young's failure-to-protect claim.

## IV.

Plaintiff also alleged a claim for violation of the Equal Protection Clause. In response, Young concedes that he is not a member of a protected class, and the facts alleged in Young's *pro se* complaint do not state a cognizable claim under the Equal Protection Clause. (*See* Pl.'s Br. 11 [ECF No. 48].)  Thus, because Young does not oppose the dismissal of his Equal Protection claim under Federal Rule of Civil Procedure 12(c), the court will grant defendants' motion as to this claim.

## V.

For the reasons stated, defendants' motion for summary judgment will be denied with respect to Young's failure-to-protect claim, and defendants' motion for judgment on the pleadings will be granted with respect to Young's Equal Protection claim.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 16th of August, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE